UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KITTLE'S HOME FURNISHING CENTER, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-01809-JMS-MJD |
| | ) | |
| 8600 ROBERTS DRIVE LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER**

Plaintiff Kittle's Home Furnishing Center, Inc. ("Kittle's") leases a warehouse in Fishers, Indiana from Defendant 8600 Roberts Drive LLC ("8600 Roberts"). The parties have a Lease Agreement under which disputes arose regarding the condition of the warehouse and who is responsible for certain maintenance and repairs. Kittle's initiated this lawsuit alleging that 8600 Roberts breached the Lease Agreement in various ways and seeking a declaratory judgment that it is not responsible for certain maintenance and repairs, and 8600 Roberts filed a counterclaim for default on the Lease Agreement. 8600 Roberts has now filed a Motion for Partial Judgment on the Pleadings, [Filing No. 26], seeking judgment on three of the four theories that Kittle's alleged relies upon in connection with its breach of the Lease Agreement claim. The motion is now ripe for the Court's consideration.

**I.**
**MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." For the purposes of a Rule 12(c) motion, the pleadings include the complaint, the answer, any counterclaims, and any written instruments attached as exhibits. *Citizens Ins. Co. of Am. v. Wyanndalco Enters.*, 70

1

F.4th 987, 995 (7th Cir. 2023) (citing Fed. R. Civ. P. 10(c); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312-13 (7th Cir. 2020); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014)). The Court "may also take judicial notice of matters of public record." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

Motions under Rule 12(c) are decided under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Citizens Ins. Co. of Am.*, 70 F.4th at 994 (citing *Mesa Labs., Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021)). "To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face." *Milwaukee Police Ass'n*, 863 F.3d at 640 (quoting *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357-58 (7th Cir. 2016); citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court therefore accepts all well-pled facts as true and will grant the motion "only if it is beyond doubt that the nonmoving party cannot prove facts sufficient to support its position and that the movant is entitled to relief." *Citizens Ins. Co.*, 70 F.4th at 990, 994 (citing *Mesa Labs., Inc.*, 994 F.3d at 867).

## II.
## BACKGROUND

The following are the factual allegations set forth in the pleadings, which the Court accepts as true at this time.

### A. The Lease

Kittle's has leased a warehouse in Fishers, Indiana ("the Leased Premises") since 1999. [Filing No. 1-3 at 1-2.] In July 2022, the former landlord sold the Leased Premises to its current owner, 8600 Roberts. [Filing No. 1-3 at 3.]

The parties' Lease Agreement imposes the following obligations on Kittle's:

**13.1 Maintenance, Repair and Replacement of Building.** At all times during the term hereof and any renewal term, [Kittle's], at [Kittle's] expense, shall keep and maintain the interior of the Premises, including floors, doors, interior walls, windows and window sash, all mechanical, plumbing and electrical systems and equipment, the fire extinguisher equipment, power and light wiring, heating equipment, water and sewer lines, air-conditioning equipment, sprinkler system and lighting equipment and fixtures, signs, and all other equipment located or affixed to the Premises by [Kittle's], and all replacements, additions or improvements thereto, in good working condition and repair. [Kittle's] shall further maintain the roof, foundation and exterior of the building in which the Premises are located and all utility lines running outside of such building.

**13.2 Drives, Parking Lots.** At all times during the term hereof and any renewal term, [Kittle's], at [Kittle's] expense, shall keep the grounds and drives and parking lots on the Premises in a clean and good condition and repair in conformance with all applicable laws and codes during the term of this Lease or any renewal thereof, at [Kittle's] expense.

[Filing No. 1-3 at 19-20.]

The Lease Agreement also grants 8600 Roberts the right to cure:

**13.3 Landlord's Right to Cure.** In the event that [Kittle's] shall fail properly to maintain, repair and replace such materials, equipment or systems as may be necessary to keep and maintain the Premises in good working condition and repair, and shall not cure such failure within thirty (30) days after [8600 Roberts] shall have given written notice to [Kittle's] stating what maintenance, repair or replacements [8600 Roberts] shall deem to be required by this Lease, [8600 Roberts] shall have the right, at its election, to pay all or any part of such charges or costs, and may expend such sums as to it may seem reasonably necessary in order to properly maintain, repair and replace such materials, equipment or systems; and such amounts so paid by [8600 Roberts] are hereby declared to be additional rental and shall be a debt immediately due and owing from [Kittle's] to [8600 Roberts], together with interest at the rate of twelve percent (12%) per annum.

**17.1 Cure Periods.** [Kittle's] shall have five (5) days after receipt of written notice from [8600 Roberts] to pay amounts required to be paid by [Kittle's]. [Kittle's] shall have thirty (30) days after receipt of notice from [8600 Roberts] to cure any default of other obligations under the terms of the Lease, or, in the event that the default (other than a payment default) is of such a character as to require more than thirty (30) days to cure, then [Kittle's] shall have such additional time as diligence requires to pursue such curative action to its completion, provided [Kittle's] commences a cure within the thirty (30) day period and diligently pursues the same until completion. [8600 Roberts] may at its option elect to cure such default, and [Kittle's] shall, upon demand, reimburse [8600 Roberts] for all damages, costs and

expenses, including attorney fees of [8600 Roberts] and interest at the rate of 12 % annum arising out of [Kittle's] default.

[Filing No. 1-3 at 20-21.] The Lease Agreement also expressly provides that reasonable and ordinary "wear and tear" are "excepted" from Kittle's maintenance obligations. [Filing No. 31 at 5; Filing No. 1-3 at 20 (Article 13.4 of the Lease Agreement); Filing No. 1-3 at 23-24 (Article XX of the Lease Agreement).] Kittle's has leased the Leased Premises for over twenty years and until early 2023, it had never been accused of being in default of the Lease Agreement. [Filing No. 1-3 at 3.]

### B. 8600 Roberts Demands that Kittle's Replace the Entire Roof Membrane

After its purchase of the Leased Premises in July 2022, 8600 Roberts hired Seamless Roofing to conduct an inspection and issue a report on the condition of the roof. [Filing No. 1-3 at 4.] Seamless Roofing's report found problems with the perimeter of the roof but found that the polyisocyanurate insulation underneath the roof membrane was dry and still in working order. [Filing No. 1-3 at 4.] Seamless Roofing then provided 8600 Roberts with two options: simply repair the perimeter areas that needed maintenance (totaling $29,950) or replace the membrane over the entire roof (totaling $935,900). [Filing No. 1-3 at 4.] 8600 Roberts then demanded that Kittle's replace the membrane of the entire 181,000 square foot roof of the warehouse at a cost of over $900,000. [Filing No. 1-3 at 3.]

### C. Kittle's Objects to 8600 Roberts' Full Demand But Agrees to Pay for Repairs

On January 11, 2023, Kittle's responded to 8600 Roberts' demand to replace the entire roof membrane. [Filing No. 1-3 at 4; Filing No. 1-3 at 35-36.] Kittle's explained that under the terms of the Lease Agreement, it was not required to replace the entire roof membrane and that normal wear and tear was excepted from Kittle's maintenance obligations. [Filing No. 1-3 at 4.] Kittle's

agreed to perform the perimeter repairs that Seamless Roofing had identified, and received a quote for $32,250 from a separate roof contractor to perform the repairs. [Filing No. 1-3 at 4.]

Notwithstanding Kittle's position, 8600 Roberts continued to demand that Kittle's replace the entire roof membrane at a cost of over $900,000. [Filing No. 1-3 at 4.] Counsel for Kittle's and 8600 Roberts had multiple productive communications in an attempt to amicably resolve the dispute. [Filing No. 1-3 at 4.]

### D. The Roof Dispute Persists and 8600 Roberts Demands that Kittle's Perform Additional Repairs

On May 4, 2023, 8600 Roberts sent Kittle's a notice reiterating its position that Kittle's was in breach of the Lease Agreement for failing to replace the entire roof membrane and further asserted, for the first time, that Kittle's was also in breach for failing to perform a seven-page, single-spaced list of additional purported unperformed work with four additional pages of diagrams and photos. [Filing No. 1-3 at 4-5; Filing No. 1-3 at 38-48.] The list of alleged unperformed work represented items that Kittle's was not required to repair or replace under the Lease Agreement, including high-priced items such as: removing and replacing 55,064 square feet of asphalt even though Kittle's maintained the parking lot in a clean and good condition and in conformance with all applicable laws and codes, [Filing No. 1-3 at 5; *see* Filing No. 1-3 at 20; Filing No. 1-3 at 38], and relocating a transformer that has been in the same location for over thirty years and prior to the inception of the Lease Agreement, [Filing No. 1-3 at 5; Filing No. 1-3 at 38-39].

### E. Kittle's Again Objects to the Full Scope of Demands

On May 30, 2023, Kittle's responded to 8600 Roberts stating that the Lease Agreement did not require the unperformed work to be paid for or done by Kittle's and reminded 8600 Roberts that normal wear and tear on the thirty-year-old warehouse was anticipated and allowed under the

5

Lease Agreement. [Filing No. 1-3 at 5; Filing No. 1-3 at 50-51.] Kittle's again agreed to perform the perimeter repairs to the roof and agreed to make certain repairs to the breakroom air conditioner. [Filing No. 1-3 at 5.]

In early June 2023, 8600 Roberts informed Kittle's that contractors would be onsite at the Leased Premises to begin performing the list of work it alleged that Kittle's was required to perform but did not perform. [Filing No. 1-3 at 6.] On June 8, 2023, Kittle's provided notice to 8600 Roberts that if it moved forward with repairing the roof and the other alleged unperformed work, it would be doing so at its sole expense. [Filing No. 1-3 at 6.] Kittle's also reminded 8600 Roberts of its obligation under the Lease Agreement to provide Kittle's with peaceful and quiet enjoyment of the Leased Premises. [Filing No. 1-3 at 6.]

### F.  8600 Roberts Sends the First Round of Invoices to Kittle's

On September 1, 2023, 8600 Roberts sent Kittle's another letter claiming that Kittle's was in breach of the Lease Agreement for failing to replace the entire roof and the other items on the list of alleged unperformed work. [Filing No. 1-3 at 6.] 8600 Roberts demanded that Kittle's pay $223,426.47 in damages, representing the first round of invoices relating to the alleged unperformed work in breach of the Lease Agreement and $69,801.44 in attorneys' fees. [Filing No. 1-3 at 6.] 8600 Roberts also provided Kittle's with an estimate of the total cost of work at the Leased Premises that it intended to charge Kittle's. [Filing No. 1-3 at 7.] The estimate totaled $1,978,172.02. [Filing No. 1-3 at 7.]

### G.  Kittle's Pays for the Roof and Air Conditioner Repairs

On September 21, 2023, Kittle's responded to 8600 Roberts with a check for $52,150, which represented the amounts that Kittle's had agreed to pay for the roof perimeter and breakroom air conditioner repairs. [Filing No. 1-3 at 7.] Kittle's did not pay the remaining balance demanded

6

because, it maintained, it was not owed under the Lease Agreement. [Filing No. 1-3 at 7.] Kittle's further provided notice to 8600 Roberts that it was in breach of the Lease Agreement for assessing charges to Kittle's that were improper under the Lease Agreement and breaching Kittle's right to peaceful and quiet enjoyment of the Leased Premises. [Filing No. 1-3 at 7.]

### H. This Lawsuit

That same day, Kittle's filed this lawsuit in Hamilton County Superior Court. [Filing No. 1.] 8600 Roberts removed the case to this Court on the basis of diversity of jurisdiction. [Filing No. 1.] Kittle's asserts two claims. In Count I, it alleges that 8600 Roberts "breached its obligations under the [Lease Agreement]" by:

> (1) asserting that Kittle's breached the [Lease Agreement], and pursuing remedies for breach of [the Lease Agreement], when Kittle's has not breached the [Lease Agreement];
>
> (2) threatening Kittle's with additional claims of default and purported future damages;
>
> (3) assessing charges against Kittle's that are not owed under the [Lease Agreement]; and
>
> (4) failing to permit Kittle's to peacefully and quietly have, hold, and enjoy the Leased Premises.

[Filing No. 1-3 at 7-8.] In Count II, Kittle's seeks a declaratory judgment that it is not obligated to install a new roof membrane, is not required to perform or pay for the list of alleged unperformed work, and is only obligated to maintain the Leased Premises in good condition, normal wear and tear excepted, consistent with the Lease Agreement. [Filing No. 1-3 at 8-9.] 8600 Roberts moves for judgment on the pleadings as to the first three allegations of breach in Count I. [Filing No. 27 at 5.]

7

## III.
### Discussion

In support of its Motion for Partial Judgment on the Pleadings, 8600 Roberts argues that the first three alleged bases for breach of the Lease Agreement cannot equate to breaches of contract. [Filing No. 27 at 5.] It asserts that "[w]hile Kittle's may disagree with 8600 Roberts regarding whether or not it was in default or owed money for these repairs, 8600 Roberts' acts do not, and cannot be, breaches of the [Lease Agreement]" because its actions were either specifically authorized under the Lease Agreement, and even if not authorized, 8600 Roberts was "merely attempting to enforce its rights" under the Lease Agreement, which does not amount to breach under Indiana law. [Filing No. 27 at 6-7.]

In response, Kittle's argues that 8600 Roberts "insists on a level of particularity in the Complaint that is contrary to basic notice pleading standards." [Filing No. 31 at 8.] It asserts that it "has plead a single count for breach of contract . . . premised on a series of actions and events that [it] alleges are a breach," and that 8600 Roberts is "tr[ying] to artificially dissect" the claim into separate and discrete claims that are inadequately pled. [Filing No. 31 at 8.] It contends that 8600 Roberts' actions are not specifically authorized by the Lease Agreement and are in fact prohibited by the Lease Agreement. [Filing No. 31 at 9.] Kittle's argues that it has properly maintained the Leased Premises, which the Court must accept as true at this stage, and that 8600 Roberts is "wrongfully demand[ing] that Kittle's perform work that is not required" by Kittle's since it has not failed to properly maintain the Leased Premises under the terms of the Lease Agreement. [Filing No. 31 at 10.]

In reply, 8600 Roberts argues that notice pleading does not save Kittle's alleged claims and that "it is not 8600 Roberts that has dissected the breach of contract claims into four separate and distinct allegations; it is Kittle's." [Filing No. 38 at 3.] It asserts that by specifically separating

and numbering the actions it contends amount to breaches of the Lease Agreement, Kittle's has alleged breaches "based on actions that cannot, by law, amount to breaches of the [Lease Agreement.]" [Filing No. 38 at 3.] It acknowledges that Kittle's is still entitled to its day in court, but only on the allegation that 8600 Roberts breached the Lease Agreement by not allowing Kittle's quiet enjoyment of the Leased Premises. [Filing No. 38 at 3.] It further argues that "seeking to enforce the terms of the [Lease Agreement] by making repairs and replacements it deems necessary" cannot amount to breach. [Filing No. 38 at 4.]

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938)). Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court." *Lodholtz*, 778 F.3d at 639. "If the Indiana Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently." *Id.*

The parties agree that Indiana law governs this action. Absent a disagreement, the Court will apply Indiana law to claims related to sites in Indiana. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. . . . Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).").

As described by Kittle's, its breach of contract claim "is premised on a series of actions and events that [it] alleges are a breach of the [Lease Agreement]." [Filing No. 31 at 8; *see* Filing No. 1-3 at 7-8.]  8600 Roberts now challenges whether some of those actions, even if true, can amount to breach of the Lease Agreement.  Practically, 8600 Roberts seeks to narrow down the focus of Kittle's breach of contract claim.  Even though Kittle's frames its claim as a single count of breach, it still nevertheless itemizes the actions it contends amount to breach, and if some of those actions cannot amount to breach, then the claim cannot be premised upon them.

A complaint need only provide a short and plain statement of the claim, but when challenged by a Rule 12(b)(6) or Rule 12(c) motion, the governing question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  And here, since the full claim is not being challenged, but rather some of the enumerated actions underlying the claim, the Court looks to whether those actions can support the claim.  *See id.*

Under Indiana law, "[a] lease is construed in the same manner as any other contract."  *Lafayette Rentals, Inc. v. Low Cost Spay-Neuter Clinic, Inc.*, 207 N.E.3d 1222, 1230 (Ind. Ct. App. 2023) (quotation and citation omitted).  To state a claim for breach of contract, a plaintiff must allege the existence of a contract, the defendant's breach thereof, and damages.  *Russell v. Zimmer, Inc.*, 82 F.4th 564, 569 (7th Cir. 2023) (citing *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021)); *see also Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011).  Here, the parties do not dispute the Lease Agreement's validity or the issue of damages, so the Court focuses on the element of breach.

"The issue of breach must be resolved by reference to the terms of the [l]ease."  *Murat Temple Ass'n, Inc.*, 953 N.E.2d at 1129.  The lease terms are read as a whole, and the language of

the lease must be construed "so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* Further, "Indiana law permits any party to disagree as to the interpretation of a contract. Courts have refused to consider this conduct a 'breach,' even if the party is incorrect." *Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1079-80 (S.D. Ind. 2011) (citing *Willsey v. Peoples Fed. Sav. & Loan Ass'n of E. Chi.*, 529 N.E.2d 1199, 1208 n.7 (Ind. Ct. App. 1988)).

Under the Lease Agreement, Kittle's is required to "keep and maintain the interior of the [Leased Premises] . . . and all other equipment located on or affixed to the [Leased Premises] . . . , and all replacements, additions or improvements thereto, in good working condition and repair." [Filing No. 1-3 at 19.] *See supra* Section II.A. Kittle's is also obligated to "maintain the roof" and "keep the grounds and drives and parking lots . . . in a clean and good condition and repair in conformance with all applicable laws and codes." [Filing No. 1-3 at 20.] *See supra* Section II.A. The Lease Agreement further provides that reasonable and ordinary "wear and tear" are "excepted" from Kittle's maintenance obligations. [Filing No. 1-3 at 20; Filing No. 1-3 at 23-24.]

"In the event that" Kittle's fails to properly "maintain, repair and replace such materials, equipment or systems as may be necessary to keep and maintain the [Leased Premises] in good working condition and repair," 8600 Roberts may exercise its right to cure. [Filing No. 1-3 at 20.] *See supra* Section II.A. Thus, the terms of the Lease Agreement ("in the event that") make clear that 8600 Roberts' right to cure is conditioned upon the event of Kittle's failure to properly maintain the Leased Premises. If such an event does not occur, then 8600 Roberts' right to cure does not arise. But if the event occurs and 8600 Roberts' right to cure arises, 8600 Roberts can either pay for all or part of the charges and "may expend such sums as . . . may seem reasonably necessary in order properly to maintain, repair and replace such materials, equipment or systems." [Filing

11

No. 1-3 at 20.] *See supra* Section II.A.  Further, the amounts paid by 8600 Roberts under its right to cure "shall be a debt immediately due and owing from" Kittle's to 8600 Roberts.  [Filing No. 1-3 at 20.]  *See supra* Section II.A.

Turning to the pleadings, Kittle's alleges that its breach of contract claim is premised on the following series of actions and events by 8600 Roberts:

(1) asserting that Kittle's breached the [Lease Agreement], and pursuing remedies for breach of [the Lease Agreement], when Kittle's has not breached the [Lease Agreement];

(2) threatening Kittle's with additional claims of default and purported future damages; [and]

(3) assessing charges against Kittle's that are not owed under the [Lease Agreement].[1]

[Filing No. 1-3 at 7-8.]

Applying the appropriate standards above to the pleadings in this case, it is clear that Kittle's first and third theories state a claim for breach that survives the pleading stage.  Under the Lease Agreement, 8600 Roberts' right to cure and right to charge Kittle's for repairs does not arise until Kittle's fails to perform its obligations under the Lease Agreement.  Here, Kittle's alleges that it has not failed to perform its obligations of keeping the Leased Premises in good condition and repair.  Assuming, as the Court must at this stage, that Kittle's has not failed to properly maintain the Leased Premises, then 8600 Roberts' right to cure and seek remedies for cure (or stated differently, its right to "pursue remedies for breach" of Kittle's maintenance obligations and "assess[] charges") has not yet arisen and its demands and assessments in furtherance of that right are a breach.  At this stage, these allegations state a claim to relief that is plausible on its face.

---

[1] Kittle's also alleges "(4) failing to permit Kittle's to peacefully and quietly have, hold, and enjoy the leased Premises," but 8600 Roberts, rightfully so, did not challenge that premise as insufficient at this stage. [Filing No. 1-3 at 8; Filing No. 27 at 5 n.1.]

8600 Roberts' arguments that these actions are authorized by the Lease Agreement, and in the alternative, are merely an attempt to enforce its rights which does not amount to a breach, is unconvincing as to these actions because the arguments ignore the language of the Lease Agreement dictating that its right to cure is expressly conditioned upon Kittle's failure to properly maintain the Leased Premises. The Court **DENIES** 8600 Roberts' Motion for Partial Judgment on the Pleadings, [Filing No. 26], as to Kittle's first and third theories of recover for its breach of contract claim.

The same cannot be said, however, for Kittle's second theory—that 8600 Roberts breached the Lease Agreement by "threatening Kittle's with additional claims of default and purported future damages." Here, 8600 Roberts' arguments are convincing because nothing in the Lease Agreement prohibits the parties from informing one another of an alleged breach and communicating what actions it may take regarding an alleged breach. Further, Indiana law allows parties to differ as to the interpretation of a contract without it amounting to breach. *Est. of Eiteljorg*, 813 F. Supp. 2d 1079-80 ("Indiana law permits any party to disagree as to the interpretation of a contract. Courts have refused to consider this conduct a 'breach,' even if the party is incorrect."); *see also Willsey*, 529 N.E.2d at 1208 n.7. The action of "threatening" that Kittle's breached is aimed at communications, which falls short of an action taken in violation of the Lease Agreement or Indiana law, and therefore cannot state a breach of contract claim. Kittle's points to no provision in the Lease Agreement or Indiana law that these actions, even if true, would amount to a breach for which a remedy can be granted, unlike Kittle's first and third theories in support of its breach of contract claim. The Court **GRANTS** 8600 Roberts' Motion for Partial Summary Judgment, [Filing No. 26], as to Kittle's second theory of recovery in support of its breach of contract claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** 8600 Roberts' Motion for Partial Judgment on the Pleadings, [26], as to Kittle's first and third theories of recover for its breach of contract claim because both theories state a claim that survives the pleading stage, but **GRANTS IN PART** 8600 Roberts' Motion for Partial Judgment on the Pleadings, [26], as to Kittle's second theory of recovery in support of its breach of contract claim because it fails to state a claim upon which relief may be granted.  No partial final judgment shall issue.


Date: 4/25/2024

*[Signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF to all counsel of record**